IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:23-cr-60225-JIC

UNITED STATES OF AMERICA,

     Plaintiff,

v.

ADAM JONATHAN LOWE,

     Defendant.

_____/

## DEFENDANT'S SENTENCING MEMORANDUM IN RE: VARIANCE

**COMES NOW** the Defendant, ADAM JONATHAN LOWE., by and through undersigned counsel, and pursuant to 18 U.S.C. §§ 3553, 3553(a) and 3661, respectfully moves this Honorable Court for a variance from the advisory sentence recommended by the Final Presentence Report ( ) [DE 178], and as cause would show to the Court as follows:

## OVERVIEW

Adam Lowe was arrested at his home in the Middle District of Pennsylvania on November 15, 2023, and appeared in the Southern District of Florida for arraignment on November 30, 2023. He was released pursuant to a $250,000 personal surety bond with Pretrial Services supervision the same day. On July 1, 2024, Mr. Lowe pled guilty to Counts I, II, IV, and VI of the indictment: conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; wire fraud, in violation of 18 U.S.C. § 1343; mail fraud, in violation of 18 U.S.C. § 1341; and engaging in monetary transactions in criminally derived proceeds, in violation of 18 U.S.C. § 1957, respectively. Pursuant to the parties' Plea Agreement. [D.E. 79], the Government agreed to seek dismissal of Counts Three, Five, Seven and Eight of the Indictment, after sentencing. On

July 29, 2024, the Court entered a Preliminary Order of Forfeiture against Mr. Lowe in the amount of $12,926,550.54.[1] [D.E. 93].

From the day he was arrested Mr. Lowe accepted complete responsibility for his criminal behavior. After his arraignment he authorized the undersigned to make contact with the prosecution team to admit his guilt. Without any promise of leniency or benefit Mr. Lowe met with prosecutors and FBI agents to explain the details of the scheme in which he and Co-Defendants Scott Schaffer and Murry Todd Peterson conspired to sell diamonds to the public at artificially inflated prices. Mr. Lowe provided information necessary to "fill in the gaps" in the Government's understanding of how the operation worked. He also voluntarily turned over all electronic devises and documents in his possession. Leading up to the trial of Murray Todd Peterson, and during trial, Mr. Lowe met with the prosecution team to provide background and context to documents and written communications to be admitted as evidence. Mr. Lowe testified on behalf of the Government at the trial; and did so humbly, in straight-forward fashion, and without any attempt to cast blame for his actions on anyone other than himself.

Mr. Lowe's criminal conduct is documented in the Factual Proffer [D.E. 80], as well as his guilty pleas, his testimony at Peterson's trial, the PSR, and the Impacts Statements of the victims. *E.g., see* PSR ¶¶ 15-39, 44-51. [D.E. 178]. This memorandum discusses the applicable category and range of incarceration set forth in the sentencing guidelines (including applicable guidelines or policy statements issued by the Sentencing Commission pursuant to § 3553(b) and 28 U.S.C. § 994(a)(3)), the extent of cooperation and assistance provided by Mr. Lowe's, and

---

[1] The amount is predicated on the relevant conduct calculation under § 2B1.1(b)(1)(K) U.S.S.G. The actual loss amount is considerably less.

mitigating factors to be considered under 18 U.S.C. § 3553(a) based on aspects of Mr. Lowe's character, his background, and his health.

## <u>CALCULATION OF THE SENTENCING GUIDELINES</u>

Pursuant to <u>United States v. Booker</u>, 543 U.S. 220 (2005), the United States Sentencing Guidelines (USSG) are no longer mandatory, but, rather, <u>advisory</u>. Although the Court must "consult" and "take into account" the guidelines at sentencing, the Court may <u>still</u> impose a "more severe or more lenient sentence" than that set forth in the guideline ranges. <u>United States v. Crawford</u>, 47 F.3d 1174, 1178 (11th Cir. 2005). Accordingly, it appears that the Court must first calculate the guideline range and then implement its authority to impose a sentence that is less than that range, or more than that range. <u>Id.</u> All the while, the Court must keep in mind the dictates of 18 U.S.C. § 3553(a) that require that "the Court shall impose a sentence <u>sufficient</u>, but <u>no greater than necessary</u>, ("the Parsimony Provision"), to comply with the purposes set forth in paragraph 2 of that subsection.

In general terms, 18 U.S.C. § 3553(a) provides that sentencing must be imposed with an eye toward punishment, deterrence, protection and rehabilitation. <u>Booker</u> further directs that the sentencing Court <u>must</u> take into account <u>all</u> of the factors that are outlined in 18 U.S.C. § 3553. Among those factors are the nature and circumstances of the <u>offender</u> and the history and characteristics of the <u>Defendant</u>. In addition, 18 U.S.C. § 3553 provides that "no limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which the Court may receive for the purpose of imposing an appropriate sentence."

Here, the PSR calculates Mr. Lowe's total offense level as <u>34</u>. Mr. Lowe believes it is properly calculated at level <u>29</u> as the PSR does not reflect the two-level reduction for zero-point offender under § 4C1.1, nor a three-level reduction for acceptance of responsibility under §

3E1.1 *See* PSR ¶¶ 68, 124. The entitlement to the zero-point reduction is noted in paragraph 4 of the PSR, yet not included in the Offense Level Computation (¶¶ 62-70). The Department of Probation denies the Defendant the 3-level decrease for acceptance of responsibility alleging that he has not ceased to engage in criminal conduct. The accusation is based on a positive urine test for THC. The Defendant does not contest that until August/September 2024 he was taking over the counter commercially available CBD gummies at nighttime to help him sleep, as well as for pain. The product contained a non-psychoactive amount (3%) of THC.  The Defendant stopped using the gummies when instructed by his supervising pretrial officer. Mr. Lowe does not believe the denial of the adjustment is warranted when considering the underlying purposes for which the reduction is intended: "The reduction of offense level provided by this section recognizes legitimate societal interests. For several reasons, a defendant who clearly demonstrates acceptance of responsibility for his offense by taking, in a timely fashion, the actions listed above (or some equivalent action) is appropriately given a lower offense level than a defendant who has not demonstrated acceptance of responsibility." Application Note 1(D); *see also* Application Notes, <u>Background</u>. (see discussion below)

Depending on the Court's rulings as to the proper offense level, this places Mr. Lowe's sentencing range at a minimum of 87 to a maximum of 188 months.

## <u>VARIENCE</u>

Sentencing courts are not bound by a legal presumption that a guidelines sentence should apply or is mandated in all cases; <u>See</u> <u>Rita v. United States</u>, 551 U.S. 338 (2007); <u>see also</u> <u>Nelson v. United States</u>, 555 U.S. 350 (2009). The guidelines are also not to be "presumed reasonable." <u>See</u> <u>United States v. Sachsenmaier</u>, 491 F.3d 680 (7th Cir. 2007).  As has been long espoused by the Supreme Court of the United States, the District Court may impose a below-guideline sentence simply because it <u>disagrees</u> with the policy decision underlying the specific guideline.

See Spears v. United States, 555 U.S. 261 (2009).  The guidelines are but one factor in a determination of sentencing and should not be given more or less weight than any other factor. See United States v. Carter, 530 F.3d 565 (7th Cir. 2008); see also United States v. Carty, 520 F.3d 984 (9th Cir. 2008). The law favors no "thumb on the scale" measuring, favoring a guideline sentence. See Sachsenmeier supra at 685.

Generally stated, District Courts may conclude that a guideline sentence fails to reflect § 3553(a) considerations, reflects an unsound judgment, does not treat a Defendant's characteristics in a proper way, or that a different sentence is appropriate "regardless." Rita v United States, 551 U.S. 338, 357 (2007). A judge's freedom to disagree with the Sentencing Commission as a matter of policy is essential to avoiding a Sixth Amendment violation. Cunnigham v. California, 549 U.S. 270 (2007).

Sentencing on matters relating to guidelines have been tempered by the application of Booker, 543 U.S. 220 (2005), Koon v. United States, 518 U.S. 81 (1996), Rita v United States, 551 U.S. 338 (2007) and Kimbrough v. United States, 552 U.S. 285 (2007), as those cases, generally, stand for the proposition that the guidelines are advisory only, and that the Court, although it must consider those guidelines, is not bound by them.  Multiple reasons exist why the Court's discretion in applying these guidelines should be exercised to eliminate enhancement in this case, and provide reasons to depart that are significant and take the Defendant out of the "heartland" of sentencing prerogatives:

A.  Defendant's Strong Family Ties May Support a Variance (U.S.S.G. § 5H1.6)

The strong presence in the lives of his young children and his role as a loving father makes a downward variance appropriate. Mr. Lowe is actively involved in their lives and a prolonged separation will cause harm. Mr. Lowe has 7 children, 13, 11, 6, 5, 3, 2 and 4 months.

Mr. Lowe was married to Ms. Nghi Thi Thuy Truong from 2011 to 2016. They have two children, Preston Lowe, age 11 and Tatum Lowe, age 13. The children live primarily with their mother in Miramar, Florida. Mr. Lowe has joint custody. He travels to South Florida to visit the children the first week of every month and has continued to do so even after his arrest. He also alternates holidays and summer vacations with his ex-wife. Mr. Lowe has an "amicable" relationship with Ms. Truong.

As noted in the PSR (¶ 81), Mr. Lowe is currently $150,000 in arrears on his monthly child support payments. The settlement agreement entered in his dissolution case was $2,500 a month, which at the time was commensurate with his income. The Fla. Department of Children and Families has recently agreed to a reduction of the amount based on the permanency of Mr. Lowe's health condition. The new amount has not yet been determined. The children are well-cared-for as Ms. Truong is a successful business owner.

In 2017, Mr. Lowe married Lizeth Lowe (neé Zepeda-Campos) in Broward County. They now live in West Pittston, Pennsylvania and have four children: Aberdeen Lowe (6 years old), Elara Lowe (5 years old), Adam Lowe Jr. (3 years old), and Grayson Alexander Lowe (4 months old). Mr. Lowe is a very active father, sharing all parenting duties, is, and always has been, extremely emotionally engaged. (See photographs included in Sentencing Submissions). Without qualification Mr. Lowe is an ideal parent.

Mr. Lowe has one other son, Bryce, born out of wedlock who is 2 years old. Bryce and his mother live within walking distance as Mr. Lowe and his family. Bryce is severely autistic, does not speak and has frequent episodes of extreme emotional outbursts. These occur frequently and as often as once a day. When such episodes occur Mr. Lowe is the primary caregiver. Bryce responds better to his father than anyone else is calming him down when episodes occur. Mr. Lowe spends time with Bryce every day and remains close by to be ready

when needed. Bryce is emotionally dependent on his father and separation will unfortunately cause harm to is wellbeing.

B.  Family History of Abuse (§ 3553(a)(1))

Section 3553 requires that a sentencing court consider the history and characteristics of the defendant. § 3553(a)(1). One such aspect of the Defendants history and characteristics is the abuse inflicted by his father. From the time he was a small child Mr. Lowe's father was a severe alcoholic coming home drunk every night. He was abusive to Mr. Lowe, his mother and his siblings. The family history as stated in the PSR (¶ 80) does not adequately describe the severity of the abuse. In 1989, when he was 7, Mr. Lowe's mother took the children to a safety shelter for a short time and separated from his father. Mr. Lowe never lived with his father again.

The undersigned believes that the abuse Mr. Lowe suffered as a small child at the hands of his father is particularly relevant to understand how he become involved in criminal behavior. Essentially, both the man who introduced and educated Mr. Lowe on how to create the fraudulent sales operation, Gregory Marshall, and Mr. Peterson who created the marketing campaign used by Peterson/Lowe to implement it, represented father figures to him.

Mr. Lowe has a suite of diagnosed psychological traits that rendered him particularly vulnerable to the influence of Mr. Marshall and Mr. Peterson. He has been diagnosed with attention deficit hyperactivity disorder (ADHD) and symptoms consistent with bi-polar disorder. In 2016 Mr. Lowe was diagnosed with depression after his divorce from Ms. Truong.

Mr. Lowe met Marshall in approximately 2009-2010. Marshall, who lives in Hollywood, Florida, has been engaged in fraudulent investment sales schemes using shell companies for more than 40 years, reaping 10's of millions of dollars illicitly. As it relates to the fraudulent activity here Marshall owned part of the Diamond Desk LLC and Peterson/Lowe,

receiving profits from the scheme. and he created other shell companies to launder the money obtained from the illicit diamond sales.

Mr. Marshall explained his guiding ethos to Mr. Lowe as well as the others he recruited to operate the schemes as: "A sucker is born every minute." And as explained to the prosecution team by Mr. Lowe, Mr. Marshall is very adept at recruiting others to directly operate his illicit operations to place a barrier between him and law enforcement.

In short, whatever moral compass Mr. Lowe possessed as a younger man, it vanished in the wake of childhood trauma, leaving him prey to the promises of easily gotten wealth from the people he gravitated toward.

C.   <u>A Defendant's Infirmities Alone or in Conjunction With Other Issues May Be a Viable Ground to Support a Variance (U.S.S.G. § 5H 1.4)</u>

**Crohn's Disease**

Mr. Lowe suffers from Crohn's disease, an incurable inflammation of the digestive tract. Because the disease is incurable, treatment focuses on the concerted management of a constellation of symptoms that wax and wane with no apparent cause.  Specific treatment for Crohn's disease varies depending on individual prevailing symptoms and response to medications. Continuous diagnostic testing is necessary. Surgery may also be necessary.

Mr. Lowe experiences significant flare ups of the disease requiring close medical management. According to the Bureau of Prisons it provides medical "services in a manner consistent with accepted community standards *for a correctional environment*." It is probable that Mr. Lowe will not receive the same standard of care while incarcerated. Mr. Lowe asks the Court to consider his need for consistent and sometimes immediate care.

**Substance Abuse and Addiction**

As noted in the PSR (¶ 90), Mr. Lowe continues to drink alcohol but at a level that he believes is socially acceptable. In the past however, he has turned to alcohol to deal with his emotional problems. Overall, Mr. Lowe has an addictive personality and without treatment and abstinence he will remain vulnerable to engaging in alcohol consumption at an abusive level.

On September 10, 2024, Mr. Lowe enrolled in substance abuse counseling through the Robinson Counseling Center in Wilkes-Barre, Pennsylvania. As of March 2025, Mr. Lowe had completed 7 out of 9 sessions. (See **Exhibit A**).

**Request for RDAP Recommendation**

The Defendant's pattern of alcohol use to cope with his emotional issues makes him a candidate for the Bureau of Prisons' Residential Drug Abuse Program ("RDAP"), and a person for whom the RDAP Program seems uniquely designed. The Defendant requests that the Court include a recommendation for the RDAP in his sentence.

In line with his addictive personality traits, Mr. Lowe is a gambling addict. Between the years 2017 to 2020 he gambled compulsively. Since that time he has "signed himself out" of every casino in Florida and Pennsylvania and every web-based gambling site he frequented. By formally signing himself out, he can be arrested if he enters any of the casinos. For the past year and half Mr. Lowe has regularly attended a Gamblers Anonymous meeting on Sunday nights at the St. Matthews Lutheran Church in Scranton, Pennsylvania. The meetings are centered around the 12-step program of Alcoholics Anonymous which requires his active participation. (see letter of Ms. JoAnn Cotton in Sentencing Submissions).

**Use of CDB for sleep**

At paragraphs 97-99 the PSR describes Mr. Lowe as having tested positive for THC during his initial intake with the Department of Probation on July 1, 2024, and a month later when reporting to his probation officer in the Middle District of Pennsylvania. However, the

9

THC in Mr. Lowe's system came from his ingestion of CBD gummies that he takes to help him sleep and for pain. These products are commercially available as legal and over-the-counter in both Florida and Pennsylvania. The percent of THC is 3% and has no psychoactive effects. While Mr. Lowe concedes that under federal law no amount of THC ingested is lawful, he requests that the Court consider that he does not ingest CBD gummies to "get high" and ceased doing so when told by his probation officer not to in August 2024.

D.  Victimization

Historically, if this Defendant is sentenced to incarceration, or a prolonged period thereof, the more likely that his physical health will increase and subject him to potential victimization, with a decreasing ability to defend himself. In United States v. Parish, 308 F.3d 1025 (9th Cir. 2002), the 9th Circuit affirmed a variance based upon susceptibility for abuse.  It is beyond obvious that physical infirmities add to the potential for that victimization that Parish described in its opinion.

As such, here, the Court's discretion to not impose any lengthy period of incarceration or house arrest is uniquely supported. Although perhaps indelicate to discuss, the Mr. Lowe's constant need for a toilet could lead to him being ostracized, ridiculed, and abused by other inmates who are unwilling or unable to empathize with the effects and symptoms of his Crohn's Disease.

E.  Other § 3553(a) Considerations

Mr. Lowe is not a hardened criminal or lacking empathy. Noted in the PSR, Mr. Lowe originally repaid diamond customers when they wanted a refund. The total amount refunded was $497,143.20. *See Am* ¶ 39.

F.  The Advisory Guideline Sentence is Too Harsh, Excessive or "Greater Than Necessary" ("The Parsimony Provision")

The above rationale similarly supports the Court's finding that a lengthy sentence (certainly the sentence promoted by the PSR) exceeds the requirements and objectives of 18 U.S.C. § 3553(a), and specifically, that "[t]he Court shall impose a sentence, sufficient but not greater than necessary" to comply with the purposes set forth within that subsection. Respectfully, we believe, as a result of the positions taken in this pleading, that the guidelines as proffered by the PSR, on balance, are unnecessarily harsh.

Thus, a sentence <u>below</u> the Guidelines, acknowledges the <u>significant</u> difference to a person with the Defendant's health concerns, as well as family responsibilities. A sentence more than 2 to 3 years may not appear overwhelmingly difficult, with <u>this</u> Defendant, it has a likely potential of doing irreparable harm to his children and family, as well as his health. Those unique combination of differences between this Defendant and others urge the Court's discretionary consideration and a reduction of the proposed guidelines.

Thus, in this instant cause, the guideline sentence which is suggested by probation and mandated by the guidelines is "greater than necessary," given all the other issues set forth in this motion, with which this Defendant must deal. 18 U.S.C. § 3553(a) directs this Court to view not what sentence is "too harsh," but rather to analyze it within the unique circumstances each and every defendant brings to the Bar at sentencing, and which <u>Booker</u> and <u>Rita</u>, <u>supra</u>, have determined, requires the judicious and experienced hand of a District Court Judge, as set forth in the Second Circuit's erudite observations in <u>United States v. Williams</u>, 65 F.3d 301, 307 (2nd Cir. 1995), in language steeped in the confidence placed in the capable hands of an experienced and compassionate jurists, as opposed to a mere reliance on a pure arithmetically created guideline cell. Moreover, the "Parsimony Provision" supports the Court's consideration for a lesser sentence in such cases, if sufficient to achieve the multi-purposes of sentencing:

"The legislative history reflects that it was not Congress' aim to straitjacket a sentencing court, compelling it to impose sentences like a robot inside a Guidelines' glass bubble, and preventing it from exercising discretion, flexibility or independent judgment. [As the sponsoring committee wrote,] The Committee does not intend that the guidelines be imposed in a mechanistic fashion. It believes that the sentencing judge has an obligation to consider all the relevant factors in a case and to impose a sentence

outside the guidelines in an appropriate case;"

and

"…we wish to emphasize that the Sentencing Guidelines do not displace *310 the "traditional role of a district judge in bringing compassion and common sense to the sentencing process." United States v. Rogers, 972 F.3d 489, 492 (2d Cir.1992). In areas where the Sentencing Commission has not spoken-areas outside the "heartland" cases considered in the Guidelines-district courts should not hesitate to use their discretion in devising sentences that provide individualized justice, provided they give reasons for their departure that allow us to ensure that the departure was permissible under the law."

Williams, 65 F.3d at 307, 309 (2nd Cir. 1995).

"The Parsimony Provision," and compassion urge the Court to consider a lesser sentence, if sufficient to achieve the multi-purposes of sentencing in this unique case.

G. Home Detention and Probation, With Conditions, May Be Sufficient and Substantial Punishments and Satisfy the Parsimony Provision

In many instances, home confinement or house arrest is, in itself, a substantial punishment.  See United States v. Bueno, 549 F.3d 1176 (8th Cir. 2008).  Home confinement has also been deemed a significant restriction on a defendant's liberty, especially in light of one's age and infirmity.  See United States v. Munoz-Nava, 524 F.3d 1137 (10th Cir. 2008).  This is true, even more so, where house arrest or probation with substantial community service and fines are included. See United States v. Whitehead, 532 F.3d 991 (9th Cir. 2008). In this cause, such a sentence would adequately satisfy the "parsimony provision" of 18 U.S.C. § 3553(a) and

comply with the nature and goals of that provision, especially when coupled with the family and health issues which the Defendant brings to the sentencing process.

H.   Exceptional Acceptance of Responsibility

From the time of his arrest Mr. Lowe has accepted responsibility for his actions. His early plea has avoided expensive and protracted trial preparation and proceedings, as well as a trial itself, and his acceptance of responsibility, at an early stage, especially in light of its impact on the case as a whole, has accomplished a significant conservation of judicial and prosecutorial resources. In addition, his admission of guilt and the extraordinary efforts he has employed to assist the Government, spending hours explaining details and providing context to the evidence that was necessary for the successful prosecution of a co-defendant, and testifying at the trial have saved the government time and money, and merit the Court's consideration as an "exceptional acceptance of responsibility" that is outside the "heartland" of normal "acceptance," and worthy of a sentence reduction in conformity therewith. Furthermore, such activity reflects the strong sense of remorse in this Defendant, which should also add to the Court's calculus in fashioning a sentence below guidelines.

In United States v. Wachowiak, 496 F.3d 744 (7th Cir. 2007), the Seventh Circuit recognized that a defendant's strong sense of character as testified to by his family, friends and teachers were mitigation factors not adequately reflected in the Guidelines criminal history zone. In such a situation, the Court may grant additional reductions. See United States v. Lieberman, 971 F.2d 989 (3d Cir. 1992); see also United States v. Garcia, 926 F.2d 125 (2d Cir. 1991); see also United States v. Bobb, 52 Cr. L. 141 (D.C. – S.D.N.Y., 1/11/93).

I.   High Prospects of Rehabilitation

Mr. Lowe's prospects of rehabilitation are significantly more substantial, given his age, family support, and insight into his difficulties, and his recognition of the underlying issues,

which opened his eyes as to the impact of this offense. (See *Defendant's Letter to the Court*, attached hereto as **Exhibit B**).

Evidenced by Mr. Lowe's refund of just under $500,000 to customers, Mr. Lowe understands and appreciates the wrongful nature of his actions. It is likely that he would have continued to provide refunds had he not fell into a downward spiral of gambling. This fact, along with his exceptional acceptance of responsibility, as well as his substantial assistance to the prosecution team, strongly suggest that Mr. Lowe's prospects for rehabilitation are high, and the likelihood of recidivism is low.

That enhanced <u>potential for rehabilitation</u> is, indeed, a factor within the Court's consideration. <u>United States v. Fernandez</u>, 443 F.3d 19, 33 (2nd Cir. 2006).

J.   <u>A Defendant With a High Liklihood of Not Reoffending, and No Apparent Danget to The Public, May Suport, In Either Case Or In Concert, a Variance</u>

As stated above, the Defendant is a bright and (notwithstanding the circumstances here) industrious young man, an active and engaged father, and deeply remorseful for his conduct. Certainly, the decisions he made for which he finds himself before the Court are his own. However, he is not by nature a "scammer," and it is unlikely that he would have chosen to engage in this scam without the influence of Gregory Marshall.

His actions are undeniably limited to, and not suggestive of, future criminal involvement. As such, a variance may be supported by such a showing. See <u>United States v. Smith</u>, 2008 WL 1816564 (4th Cir. 2008); <u>see also</u> <u>United States v. Hein</u>, 463 F. Supp. 2d 940 (E.D. Wisc. 2006) (finding a variance to be justified on ground of low likelihood of reoffending, and ultimately sentencing Defendant, who fell within guidelines of 12-18 months prison for felony possession of ammunition, to a non-prison sentence based on this ground).

K.   <u>The Defendant's Early Cooperation</u>

Immediately upon the Defendant's arrest, he made a decision to accept responsibility for these acts and communication was made to the Assistant United States Attorney handling this matter through his counsel. Thus, the Government, from nearly his arrest date, was not tasked with providing useless and time-consuming discovery. He then voluntarily met with the Government for on multiple occasions, even during the trial of Murray Todd Peterson, to assist in the preparation of the prosecution. He testified at the trial, and his demeanor and forthrightness in explaining the details of his criminal conduct and that of his co-defendant greatly assisted in securing the conviction of Mr. Peterson.

L.   Totality of Circumstances

Although the Defendant believes that one, or several, of the individual grounds for variance made herein are consistent with the Sentencing Guidelines application of a variance to house arrest and probation, certainly, the application of all of these issues combined to provide this Defendant with rational grounds for variance.  Courts have fairly uniformly held that where one individual factor may not be sufficient to vary from guidelines, certainly two or more factors may take an individual out of the "heartland" for such a variance. See United States v. Rioux, 97 F.3d 648, 663 (2nd Cir. 1996 – unpub.); United States v. Paradise, 14 F. Supp. 2d 1315 (U.S.D.C. - N.G.D.A. 1998).

Thus, the combination of factors relevant to providing a basis for variance may, and should, work as a cohesive team of rational bases therefor. In this unique and compelling case, such a relevance threads its way unerringly and convincingly through the fabric of the entire sentencing process. Surely, if the accumulation of reasons in this cause does not support a variance, it would be difficult to envision a set of circumstances that does.

A criminal sentence must reflect the individualized assessment of a particular Defendant's culpability rather than the mechanistic application of a given sentence to a given

category of crime.  United States v. Barker, et al., 771 F.2d 1362 (9th Cir. 1985). Especially significant is the fact that a combination of factors may constitute a "mitigating circumstance," as long as the District Court identifies that circumstance and "given the Sentencing Commission's acknowledgment of the 'vast range of human conduct' not encompassed by the guidelines, a unique combination of factors (which) may constitute the 'circumstance' or that mitigation." United States v. Floyd, 945 F.2d 1096, 1099 (9th Cir. 1991), citing United States v. Cook, 938 F.2d 149, 153 (9th Cir. 1991).  (Relating to criminal history only, an issue that does not affect this Defendant, with a criminal history of 0).

In the overall scheme of the sentencing guidelines as applied to these atypical and specific facts, it is evident that these facts and circumstances are clearly of a kind, or to a degree, not adequately taken into consideration by the Commission, especially in concert with each other, and a variance on sentencing guidelines is urged to be appropriate.  A reduced sentence in this case is appropriately grounded on:

a. **Mr. Lowe's immediate acceptance of responsibility**

b. **His unreserved cooperation and substantial assistance.**

c. **His strong family ties and role as a caregiver to his son Bryce.**

d. **An RDAP Recommendation**

e. **Victimization**

f. **The Parsimony Provision**

g. **Home Detention and Probation Conditions**

h. **High Prospects of Rehabilitation**

i. **Early Cooperation, and**

j. **Totality of Circumstances**

Thus, the basis for deviation may, and should, work as a <u>cohesive team of rational bases</u> therefor.

Indeed, the historic role of the sentencing judge, may continue to be exercised, and the Court is not prohibited from including in its consideration of sentence, the judge's <u>own</u> <u>sense</u> of what is a fair and just sentence under <u>all</u> the circumstances, and which does not exceed the bounds of reasonableness.  <u>See also</u> <u>United States v. Jones</u>, 460 F.3d 191 (2nd Cir. 2006).  It is respectfully urged that the Court has every right, and bears every responsibility, to take into account the human factors involved in sentencing, and to apply that own <u>sense,</u> and the Court's own feelings and experiences developed through years of practice just living life, in each individual case to fashion an appropriate sentence pyramiding all of these factors.

The Court, in utilizing, and complying with 18 U.S.C. § 3553, can fashion a sentence that would be fair, and would satisfy all four of the sentencing prerogatives as to Mr. Lowe, yet still would follow and abide by the sentencing factors and goals set forth in that section. It should further be noted that factors <u>previously prohibited</u> by guidelines, may, in the wake of <u>Booker</u> and its progeny, be factored into the Court's consideration for variances. <u>See</u> <u>United States v.</u> <u>Severino</u>, 453 F.3d 206 (3rd Cir. 2006); <u>United States v. Gatewood</u>, 438 F.3d 894 (8th Cir. 2006); <u>United States v. Lake</u>, 419 F.3d 111, 114 (2nd Cir. 2005).

That the Defendant, by and through undersigned counsel, is filing his Memorandum Re: Sentencing Submission, providing letters and photographs indicating his stature, and the way he is viewed by <u>members of his own family and community</u> for the Court's edification, and for support for the sentencing recommendations made herein.

**WHEREFORE,** in consideration of the above, the Defendant respectfully moves this Honorable Court, for a substantial variance from the advisory guidelines, as this Honorable Court

deems appropriate, together with any other considerations or conditions that give comfort to the Court in this extremely important matter.

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on May 13, 2025, the foregoing document has been electronically filed with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served on this day to all counsel of record or pro se parties, either via Transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

/s/ *David A. Frankel*
DAVID A. FRANKEL

Law Offices of David A. Frankel, P.A.
Attorneys for Defendant
4601 Sheridan Street, Suite 212
Hollywood, FL 33021
(954) 683-0300
David@BlueLotuslaw.com
eService@BlueLotusLaw.com
Paralegal@BlueLotusLaw.com
FLA. BAR NO.  741779